[File No. 6773.]

JOHN MOSES, Governor of the State of North Dakota, Petitioner, v. HERMAN THORSON, as Secretary of State of the State of North Dakota, Respondent.

(299 NW 305)

Opinion filed July 14, 1941

*Clyde Duffy,* for petitioner.

*Alvin C. Strutz,* Attorney General, and *P. O. Sathre* and *William Pearce,* Assistant Attorneys General, for respondent.

PER CURIAM. This is an original proceeding in this court to review the decision of the Secretary of State as to the sufficiency of a referendum petition.

The Constitution provides: "Seven thousand electors at large may, by referendum petition, suspend the operation of any measure enacted by the legislature, except an emergency measure. . . . Such petition shall be filed with the secretary of state not later than ninety days after the adjournment of the session of the legislature at which such measure was enacted. . . . The secretary of state shall pass upon each petition, and if he finds it insufficient he shall notify the 'committee for the petitioners' and allow twenty days for correction or amendment. All decisions of the secretary of state in regard to any such petition shall be subject to review by the supreme court. . . . If proceedings are brought against any petition upon any ground, the burden of proof shall be upon the party attacking it. . . . Laws may be enacted to facilitate its operation, but no law shall be enacted to hamper, restrict or impair the exercise of the rights herein reserved

to the people." N. D. Const. § 25, as amended; Article 26 of Amendments to the Constitution of North Dakota.

Conformable to the constitutional provision authorizing laws to be enacted to facilitate the operation of the provisions of the Constitution relating to the initiative, referendum, and recall, the Legislature enacted a statute "to safeguard the initiative, referendum, and recall provisions of the Constitution by prohibiting illegal and fraudulent signatures to petitions, prescribing form and manner of signing, and penalties for violations." Laws 1925, chap. 135. That statute provided that "no person shall sign any initiative, referendum, or recall petition . . . unless he is a qualified elector. No person shall sign any such petition more than once. Each signer shall add his residence, post office address, and date of signing. Each copy of any such petition before being filed must have attached thereto an affidavit to the effect that each signature to the paper appended is the genuine signature of the person whose name it purports to be, and that each such person is a qualified elector."

On June 5th, 1941, a referendum petition was filed with the Secretary of State invoking the provisions of the Constitution against Senate Bill No. 184 (Laws 1941, chap. 216), a measure enacted by the Legislative Assembly at the twenty-seventh session, entitled *An Act to create a Governmental Survey Commission.* The Secretary of State found and determined that there were in all seven thousand one hundred and forty-one signatures (7,141) upon such petition, but that sixty-four (64) of such signatures were not the signatures of the persons they purported to be, but had been signed by others; and that consequently there were seven thousand and seventy-seven (7,077) genuine signatures on such petition, and no more. The Secretary of State thereupon, on June 10th, 1941, made his decision and certified that the referendum petition filed against said Senate Bill No. 184 was sufficient.

Thereafter this proceeding was instituted in this court to review the decision of the Secretary of State. In the petition filed in this court asking for such review, a number of objections are leveled at the referendum petition, all going to the validity and genuineness of the signatures that purport to have been affixed to the petition. The objections

resolve themselves to this: That the petition has not been signed by seven thousand electors; that consequently it is fatally defective, and furnishes no valid basis for the submission of the measure to the people at an election, or any basis for the suspension of the operation of the measure pending the submission thereof at an election.

In his answer, the Secretary of State alleged that he had no knowledge or information sufficient to form a belief as to the truth of the allegations of the petition attacking the validity and genuineness of the signatures to the petition, which signatures the Secretary of State had found to be sufficient, and that hence he denied such allegations.

As the issues thus framed presented questions as to the validity and genuineness of many signatures to the petition and foreshadowed the necessity of the taking of testimony of many witnesses, this court deemed it proper and desirable to send the issues of fact relating to the validity and genuineness of the questioned signatures to the petition to a district court for trial pursuant to the provisions of § 87 of the Constitution of this state. Accordingly, an order was entered sending the issues of fact to the district court of Burleigh county for trial and designating the Honorable Harry L. Berry, one of the judges of the Sixth Judicial District, to preside at the trial. A trial was had in the district court, and the district court has transmitted to this court its findings of fact, together with a transcript of the proceedings had and the evidence adduced upon the trial.

Thereafter the cause came on for hearing before this court. Both petitioner and defendant appeared by their respective counsel at such hearing. No exceptions were taken to any of the findings of fact made by the district court, but they were conceded to be in all respects correct and in accord with the evidence.

Among others, the district court found the facts to be that the defendant Secretary of State had found and determined that the referendum petition had affixed thereto 7,077 valid signatures and had certified the petition to be a sufficient referendum petition; that among the 7,077 signatures so accepted and found by the Secretary of State to be valid signatures, there were in all 104 names of persons who had not signed the petition at all; that such signatures were on lists that had been attached and fastened to the regular petition and purported to be

a part thereof, although none of such signatures had been affixed to the petition but had been signed, by the persons whose signatures they purported to be, to other petitions at other times and for wholly different purposes. That there also were included among the names so counted and accepted by the Secretary of State as valid signatures to the petition, one hundred and eleven (111) signatures of persons whose names had been affixed after the persons who circulated the same had made their affidavits as to the genuineness of the signatures on the petition; and that none of said one hundred and eleven names were covered by, or included in, the affidavits as to the genuineness of signatures attached to the petition. The court, in its findings, also found that a number of other signatures attached to the petition were invalid for various reasons which it is not necessary to consider.

The findings of fact are in accord with the evidence. The chairman of the "committee for the petitioners," named on the petition, testified that he received the several "copies" of the petition from the "circulators" with the affidavit prescribed by chapter 135, Laws 1925, attached to each such "copy," to the effect "that each signature to the paper appended is the genuine signature of the person whose name it purports to be and that each such person is a qualified elector." He further testified that he had no adding machine, and that he took the copies of the petition he had received to the Hail Department to be checked on adding machines, and that some of the copies that had been circulated and returned were not delivered to him, but "went into the general office" to be checked on the adding machines. That later he was informed that the names had been checked on the adding machines, and that the petition was ready for filing, and that he thereupon took the petition to the Secretary of State's office and delivered it for filing. He identified copies of the petition which he had received from the circulators, and testified that certain sheets containing signatures that had been attached and fastened to the petition, and considered by the Secretary of State as valid signatures, were not a part of the petition when he received the same from the circulators. The persons who had circulated the copies of the petition to which such sheets had been attached, testified that such sheets were no part of the petition which

they circulated and which they transmitted to the committee for the petitioners.

The only reasonable inference from the evidence is that the sheets containing such additional signatures were attached to the copies of the petition after the chairman of the committee for the petitioners had delivered them to have the names checked and before they were returned to him and delivered by him to the Secretary of State. There is no reason to believe that any of the names were added or that any part of the petition was in any manner tampered with after it was filed with the Secretary of State. Neither is there any reason to believe that the chairman of the committee for the petitioners had any part in attaching the lists of names, or in any of the other wrongful practices that are charged. On the contrary, the chairman of the committee manifested indignation over the fraudulent practices that had been pursued. In a statement presented to the trial court near the close of the trial, he said:

"As Chairman of the Petitioners' Committee, I make this statement to the Court concerning the Petitions involved in this case.

"The petitions sponsored by this Committee were circulated and filed in good faith, and when filed were, to the best of our knowledge, bona fide in every particular. We had no knowledge or suspicion that any names or lists had been attached to the original petitions.

"I have been present here in Court at this hearing and heard the evidence produced and it appears that some person or persons unknown, in an excess of zeal, and without the knowledge or consent of our Committee or the political party of which we are members, attached sheets containing names not on the original petitions. Such actions cannot be sanctioned and the Committee and those responsible for the circulation of the petitions feel that in the interest of the people of our state, and because we do not feel that it is fair or proper to spend the taxpayers' money substantiating the valid signatures on the petitions, the Court should find as a fact, on the showing now made, that the petitions relating to Senate Bill 184 and House Bills 137 and 142, are insufficient to refer the laws to the vote of the people.

"Those responsible for the circulation of these three petitions have an abiding conviction that the right of referendum is a valuable right

reserved to our people, and should be exercised in a fair and legal manner, and any abuse of it by an unauthorized few should be rebuked and not countenanced."

It follows from the facts found by the district court that at least 215 signatures out of the 7,077 signatures counted and accepted by the Secretary of State as valid signatures were not signatures to the petition at all; and that when such spurious and invalid signatures are deducted there are not to exceed 6,862 signatures on the petition. The Constitution requires a minimum of 7,000 signatures to a referendum petition. A petition that has not been signed by at least 7,000 electors is not a referendum petition at all, within the contemplation of the Constitution.

The decision of the Secretary of State finding the referendum petition to be sufficient is set aside and he is directed to give no effect thereto, and take no steps to cause said Senate Bill Number 184 (Laws 1941, chap. 216), to be submitted at an election.

BURR, Ch. J., and CHRISTIANSON, MORRIS, NUESSLE, and BURKE, JJ., concur.